UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| MICHELLE MICKENS, | * | CIVIL ACTION NO: |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| v. | * | JURY TRIAL DEMANDED |
| | * | |
| OGLETHORPE COUNTY SCHOOL SYSTEM and SUPERINTENDENT BEVERLY LEVINE, in her official capacity, | * * * * | |
| *Defendants.* | * | |
| ********************************** | * | |

**COMPLAINT**

Plaintiff Michelle Mickens, by and through her counsel, hereby files this Complaint against Oglethorpe County School System and Superintendent Beverly Levine in her official capacity.

**I.   INTRODUCTION**

1. Michelle Mickens has been a public educator in Georgia, with an unblemished record, for more than twenty years. During that time, she has served her students and strengthened public education. In 2022, she was a statewide finalist for Georgia Teacher of the Year. But, in September 2025, she was placed on indefinite leave and urged to resign for engaging in private, out-of-the-workplace speech on her personal social media account on matters of public concern. Her speech did not harm her employer or disrupt her workplace. Therefore, the District's actions in retaliation for that speech violated the First Amendment.

2. After the assassination of political commentator Charlie Kirk, Ms.

Mickens posted a quote from him on her personal Facebook page and participated in an online discussion with her Facebook friends who commented on the post. In this back and forth, she responded to a friend's comments on that post with her own words, which were critical of Kirk but also condemned political violence. Ms. Mickens' comments were made after work on a private account that she does not share with students or co-workers. Her posts did not mention her employer, her school, or her students.

3. An out-of-state former high school classmate took a screenshot of her post that criticized Kirk and then circulated it online, where it was ultimately shared with her employer. The post neither disrupted her school nor created a controversy within her workplace. The decision to remove Ms. Mickens from her classroom has been the only disruption to the school's operations. Still, Defendants have placed her on indefinite paid suspension pending termination of her employment because of her constitutionally protected speech and, though they have provided no notice of charges, made clear that they intend to terminate her.

4. This is an action under 42 U.S.C. § 1983, challenging Defendants' deprivation under color of law of Plaintiff's rights, privileges, and immunities under the First Amendment to the United States Constitution.

**II.    THE PARTIES**

5. Plaintiff Michelle Mickens is a high school educator in the Oglethorpe County School System. She has more than 24 years of experience in the classroom.

6. Defendant Oglethorpe County School System (the "District") is a

governmental entity operating the public school system of Oglethorpe County, Georgia, under the control and management of the Oglethorpe County Board of Education (the "Board"), pursuant to Ga. Const. art. 8, § 5, ¶ I; O.C.G.A. § 20-2-50.

7. Defendant Beverley Levine is the District's superintendent and the Board's executive officer. Defendant Levine is a final policymaker and decision-maker responsible for interpreting and implementing the Board's policies and state rules and regulations under Ga. Const. art. 8, § 5, ¶ III; O.C.G.A. §§ 20-2-61(a); 20-2-109; and 20-2-940(g). Defendant Levine, acting under color of law, retaliated against Ms. Mickens for constitutionally protected activity and disciplined her for speech based on its viewpoint. Defendant Levine is sued in her official capacity.

## III. JURISDICTION AND VENUE

8. This constitutional action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution.

9. This Court has subject matter jurisdiction over this action pursuant to Article III of the United States Constitution, 28 U.S.C. §§ 1331 and 1343.

10. This Court has the authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and this Court's general legal and equitable powers.

11. This Court has personal jurisdiction over Defendants because Defendants include a public official who is domiciled in the State of Georgia and who performs her official duties in the State of Georgia, and a public entity located in the State of Georgia.

12. Venue in this District is proper under 28 U.S.C. § 1391 because one or more Defendants reside in this District, all Defendants are residents of the State in which this District is located, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred and are occurring in this District.

**IV.   FACTUAL ALLEGATIONS**

13. Plaintiff Michelle Mickens is a tenured high school English teacher with over two decades of classroom experience. A proud Georgian, she has dedicated her career to uplifting students in her state.

14. Ms. Mickens holds a bachelor's degree in English Education from the University of Georgia, a Master's in Educational/Instructional Technology from Kennesaw State University, and an Advanced Specialization in Leadership from Valdosta State University—credentials that reflect her deep commitment to both teaching and learning in Georgia.

15. For 20 years, Ms. Mickens taught in the Wilkes County School System in Georgia. During her time there, she received annual performance evaluations, all of which were positive and contained no concerns or complaints about her teaching.

16. In 2022, her outstanding work in the classroom was recognized statewide when she was named a finalist and runner-up for Georgia Teacher of the Year.

17. In the spring of 2023, Ms. Mickens was encouraged by a professional colleague to apply for a position with the Oglethorpe County School System. She applied, was offered the job, and accepted. She began teaching 11th-grade English

4

in the fall of 2023 and, in 2024, began teaching 10th-grade English.

18. Since joining the District, Ms. Mickens has received two formal annual evaluations, both of which were positive.

19. Prior to the events giving rise to this lawsuit, Ms. Mickens had never received a formal complaint regarding her professional conduct or teaching performance.

20. Ms. Mickens has two Facebook accounts: one public account for her professional and employment activities, and another private account for her personal life. The latter account does not include any students or parents, or school employees, except for a few close friends.

21. On Wednesday, September 10, 2025, political figure Charlie Kirk was assassinated. After work hours and while at home, Ms. Mickens shared a personal post with her friends on her private Facebook account, using her personal computer. The post was a direct quote from Charlie Kirk, which read:

> "'I think it's worth it. I think it's worth to have a cost of, unfortunately, some gun deaths every single year so that we can have the Second Amendment to protect our other God-given rights.- Charlie Kirk'"

22. Ms. Mickens offered no commentary when posting the quote. The post did not mention her school, employer, students, or any school personnel. Her privacy settings restricted the post to "friends only."

23. The comment sparked a discussion between Ms. Mickens and several friends—some of whom disagreed with her sharing the quote—which led Ms. Mickens to respond later that evening to a Facebook friend, stating:

5

> Yeah, you took this way too far. You make a lot of horrible assumptions here, but that says more about you than it does about me. I don't condone violence of any kind, and I certainly don't condone this, but he was a horrible person, a fascist full of hate for anyone who was different. While I'm sad that we live in a country where gun violence is an epidemic, the world is a bit safer without him. I didn't respect him at all, and he's part of the hatred and vitriolic language we hear so much now. I pray that without him, people can be kinder and more tolerant to one another.

24. On Thursday, September 11, 2025, Ms. Mickens was called to the office, where Principal Bill Sampson and Defendant Superintendent Levine informed her that a complaint had been received by the school from an unknown individual, who, on information and belief, is not a student, parent, employee, or resident of the school district. Sampson assured Ms. Mickens that she was not in trouble but wanted to make her aware of the situation. Sampson did not disclose the name of the complainant or the nature of the complaint.

25. Later that evening, Ms. Mickens received a text from a friend in Chicago. The friend warned Ms. Mickens that a person named Michael Iniquez had alluded to targeting Ms. Mickens on social media. Iniquez is Ms. Mickens' former classmate from high school who lives in Chicago. He posted an article on social media about a South Carolina teacher who had been fired from her job and added a comment saying, "The Georgia bitch is next."

26. On Friday, September 13, 2025, around 11:15 a.m., Ms. Mickens was tagged in a post on X (formerly Twitter) and learned that Iniquez had followed through on his threat. He had taken a screenshot of Ms. Mickens' Facebook post and shared it publicly. The Iniquez post was subsequently reshared by another X

account that goes by the name of "WomenPostingLs." Both posts were accompanied by a call-to-action urging others to contact Sampson and demand Ms. Mickens' termination. The posts tagged Ms. Mickens, named her employer, and provided a phone number to the school's main line with a message to let Sampson "know what you think of letting someone like her teaching [sic] children." The post also provided Sampson's direct email address.

27. Upon seeing this, Ms. Mickens promptly contacted Sampson and requested a meeting to address the situation.

28. Shortly after that, but before lunch, Ms. Mickens met with Sampson. Defendant Levine, who works on the same campus in a nearby building, attended the meeting as well. The meeting was cordial, even lighthearted at times. There was no discussion or insinuation that Ms. Mickens would be disciplined.

29. At some point during the meeting, Defendant Levine and Sampson stated that Ms. Mickens should delete her Facebook post. She declined and explained that she would like to consult an attorney before removing the post. Sampson and Defendant Levine then suggested instead that she should issue an apology or clarify that her wording was inappropriate. Ms. Mickens reiterated that she would need to consult her attorney before making any public statement.

30. Ms. Mickens stayed in the front office for approximately two hours. During sixth period, Defendant Levine and Sampson decided to send Ms. Mickens home early. They promised to update Ms. Mickens upon her return. This was the last day Ms. Mickens was in her classroom.

31. On information and belief, the District has no social media policy for teachers' off-campus social media activity, and Ms. Mickens' Facebook posts did not violate any state, District, or school rules or policies.

32. Between her initial post on September 11 and leaving school on September 13, Ms. Mickens continued to perform her teaching and other job duties as normal. No student or teacher discussed the post with her. Her comment did not disrupt her workplace.

33. On Sunday, September 14, Defendant Levine texted Ms. Mickens and asked her to remain home but to send lesson plans for Monday and Tuesday of that week. Ms. Mickens did so.

34. The following Tuesday, September 16, Ms. Mickens learned that her access to school emails and PowerSchool had been terminated.

35. Ms. Mickens is a member of the Georgia Association of Educators ("GAE"). On September 22, through her GAE representative, Ms. Mickens was informed through the District's attorney that her continuing to post on social media was "troubling" and stated that it would be "harder to get her back in the classroom" if she continued to engage in any social media activities. The District did not provide Ms. Mickens with any specific information about what posts it found troubling.

36. On Sunday, September 29, Ms. Mickens was informed through her GAE representative that the District did not want her to return to teaching and that she would be terminated if she did not voluntarily resign.

37. While Ms. Mickens has been on leave, other District employees who expressed pro-Charlie Kirk views were not disciplined for their expressive conduct. For example, several teachers have posted photos on social media wearing pro-Kirk t-shirts at school.

38. On Sunday, October 12, Defendant Levine sent notice to Ms. Mickens' students and their parents notifying them that Lorraine Genetti would be teaching Ms. Mickens' classes.

39. On October 14, the Board met, and on information and belief, hired Lorraine Genetti as Ms. Mickens' apparent replacement, though Ms. Mickens has not yet been terminated.

40. To date, while Ms. Mickens fears further retaliatory acts, she has not removed the Facebook post, but she has changed the visibility settings so that only she can view the post and its comments.

41. The District's actions described above have caused significant emotional, reputational, and professional harm to Ms. Mickens. Teaching has been her lifelong vocation, and the loss of her position has deeply affected her sense of purpose and stability. She now faces uncertainty regarding future employment opportunities, particularly given the circumstances of her termination. Most, if not all, school systems' employment applications require disclosure of an educator's termination or resignation.

42. Ms. Mickens regularly comments on current political events, including her views on reducing gun violence, and would like to do so in the future. However,

she has been afraid to do so since September 13 because she fears that it may subject her to further punishment or termination by her employer.

43. Defendants' actions have created a constructive prior restraint, as their treatment of Ms. Mickens sent a clear and chilling message to her and other employees that speech critical of or inconsistent with the District's preferred viewpoints would result in punishment or career consequences. This unlawful chilling effect has discouraged Ms. Mickens from engaging in future protected speech that she wishes to make presently.

V.     CLAIMS FOR RELIEF

**Count One**
**Violation of First Amendment Retaliation (42 U.S.C. §1983)**
**Against All Defendants**

44. Plaintiff incorporates the foregoing paragraphs, 1 through 36 and 38 through 41, as fully set forth herein.

45. Ms. Mickens engaged in speech protected by the First Amendment of the U.S. Constitution when she quoted Charlie Kirk's own words and when she responded to comments on her personal, private Facebook account regarding a matter of public concern.

46. Ms. Mickens spoke as a private citizen and not pursuant to her duties as a teacher.

47. Ms. Mickens spoke on a matter of public concern by sharing Charlie Kirk's own words expressing his views on gun control and gun violence. Ms. Mickens then offered her own views on these same issues, along with her thoughts

on his impact on political discourse.

48. Ms. Mickens' speech did not reference the District, her students, her employment, any other District employee, nor did it cause or reasonably threaten to cause any material disruption to the District's educational operations.

49. Defendant Levine, acting under color of state law, and in her official capacity, effectuated and sanctioned Ms. Mickens' suspension from her duties and recommended that the District hire an apparent replacement for her. That recommendation was accepted by the Board. Defendant Levine, as Superintendent, took these adverse employment actions as a result of Plaintiff's constitutionally protected speech. Defendant Levine's actions constitute intentional retaliation and reckless or deliberate indifference to the known violation of Ms. Mickens' constitutional rights. As a public official with the authority and duty to prevent the constitutional violations addressed herein, Defendant Levine's actions and inaction violated Ms. Mickens' constitutional rights and subjects her to liability under 42 U.S.C. § 1983.

50. The District is liable because it maintained and enforced an official policy, custom, or practice of disciplining employees for speech that expressed disfavored or controversial viewpoints. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

51. Ms. Mickens' protected speech was a substantial or motivating factor in Defendants' decision to place her on indefinite leave, and Defendants cannot show they would have taken the same action absent Ms. Mickens' speech.

52. As a direct and proximate result of this retaliatory discrimination, Ms. Mickens has suffered and continues to suffer damages, including reputational harm, economic loss, emotional distress, and loss of constitutionally protected rights.

**Count Two**
**Violation of the First Amendment and Fourteenth Amendment**
**Viewpoint Discrimination and Prior Restraint (42 U.S.C. § 1983)**
**Against All Defendants**

53. Plaintiff incorporates paragraphs 1 through 43, as fully set forth herein.

54. Ms. Mickens engaged in speech protected by the First Amendment of the U.S. Constitution when she quoted Charlie Kirk and responded to comments under said quote on her personal, private Facebook account regarding a matter of public concern, including her views on the dangers of gun violence.

55. Ms. Mickens spoke as a private citizen and was not speaking pursuant to her duties as a teacher.

56. Defendants Levine and the District have condoned open displays of political allegiance to and in support of Charlie Kirk by teachers within and employed by the District. Such allegiance has included teachers participating in activities to celebrate Kirk's birthday on school campus by wearing t-shirts emblazoned with the word "Freedom" and images of crosses in his memory.

57. By contrast, Defendants Levine and the District have retaliated against Ms. Mickens for a private, out-of-work, social media post, while simultaneously condoning pro-Kirk advocacy in the workplace, during working

hours, in front of students and members of the public. Defendants' actions toward Ms. Mickens constitute viewpoint-based discrimination in violation of the First and Fourteenth Amendments.

58. This selective enforcement and punishment constitute unlawful viewpoint discrimination, targeting Ms. Mickens solely because her opinions diverged from those favored or tolerated by Defendants.

59. Defendants requested that Ms. Mickens remove her post, issue an apology or retraction, and/or stop using social media altogether. These demands were seeking to force a prior restraint and/or compel speech against Ms. Mickens.

60. When Ms. Mickens did not take down her post or cease engaging on social media, Defendants, acting under color of state law, took adverse employment action against Ms. Mickens because of the viewpoint she expressed in her communications.

61. On information and belief, Defendants maintain no clear standards for employee social media use, leaving discipline for posting at home and on private social media accounts unrelated to school activities to their unbridled discretion.

62. The First Amendment prohibits government entities and public employers from discriminating against an individual based on the content or viewpoint of their speech. Defendants' sanctions against Ms. Mickens amount to a constructive prior restraint, as their treatment of her sent a clear and chilling message to her and other employees that speech critical of or inconsistent with the District's preferred viewpoint would result in punishment or career consequences.

63. As superintendent, Defendant Levine is a constitutional officer under Article III, Section V, Paragraph 3 of the Georgia Constitution, with final policymaking authority regarding the actions at issue, including suspension, termination notices, and employment recommendations for teachers—a prerequisite for Board action.

64. Defendant Levine's discipline of Ms. Mickens solely because of her expressed viewpoint outside of work to private citizens on matters of public concern and private political speech, violated clearly established constitutional law and was not narrowly tailored to serve any compelling governmental interest.

65. Defendant Levine subjected Ms. Mickens to adverse employment actions due to her constitutionally protected speech. Defendant Levine effectuated the violation of Ms. Mickens' federally protected constitutional rights by using authority reserved to her as superintendent by the Georgia Constitution and Georgia law to suspend Ms. Mickens from her employment and, through counsel, threaten to terminate her employment if she did not resign. These actions are deliberate, intentional, and constitute a purposeful violation of Ms. Mickens' constitutional rights.

66. At the October 14th Board Meeting, Defendant Levine recommended that the Board hire an apparent replacement for Ms. Mickens. Under Georgia law, the Board could not hire Mickens' replacement unless and until Defendant Levine recommended such replacement to the Board, such that Defendant Levine possesses or, at least shares, final authority over this employment decision.

67. Ms. Mickens' protected speech was a substantial or motivating factor in Defendants' decision to place her on indefinite leave, and Defendants cannot show they would have taken the same action absent Ms. Mickens' speech.

68. As a direct and proximate result of this viewpoint-based discrimination, Ms. Mickens has suffered and continues to suffer damages, including reputational harm, economic loss, emotional distress, and loss of constitutionally protected rights.

## VI. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court:**

A. Declare that the actions complained of herein violate 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

B. Issue injunctive relief restraining Defendants, their employees, agents, and successors in office from enforcing, implementing, or otherwise carrying out any decision to suspend, discipline, or terminate Ms. Mickens in connection with the events described herein.

C. Issue injunctive relief reinstating Ms. Mickens to her former position of employment and ordering the modification of her personnel file and employment records to remove any reference to discipline, misconduct, or policy violations related to the events giving rise to this action.

D. Issue injunctive relief restraining Defendants, their employees, agents, and successors in office from enforcing, implementing, or otherwise enforcing policies or practices that restrain, compel, or chill constitutionally protected speech.

E. Award Ms. Mickens nominal, presumed, and actual damages, including compensation for lost wages and benefits, emotional distress, reputational harm, and other damages proximately caused by Defendants' unlawful actions.

F. Award Ms. Mickens the costs of this action, including reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988 and any other applicable law.

G. Grant such other and further relief as the Court deems just, proper, and equitable.

/s/ *Michael J. Tafelski*
Michael J. Tafelski
Georgia Bar No. 507007
Samuel Boyd*
Florida Bar No. 1012141
Sophia Mire Hill*
Louisiana Bar No. 36912
Neil S. Ranu*
Louisiana Bar No. 34873
Southern Poverty Law Center
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA 30030-2553
Ph: (334) 956-8273
michael.tafelski@splcenter.org
sam.boyd@splcenter.org
sophia.mire.hill@splcenter.org
neil.ranu@splcenter.org

/s/ *Matthew Billips*
Matthew Billips
Georgia Bar No. 057110
Detra Hicks
Georgia Bar No. 982460
Barrett & Farahany
2921 Piedmont Road
Atlanta, GA 30305

16

Ph: (470) 284-7265
matt@justiceatwork.com
detra@justiceatwork.com

/s/ *Gerald Weber*
Gerald Weber
Georgia Bar No. 744878
Law Offices of Gerry Weber, LLC
P.O. Box 5391
Atlanta, GA 31107
Ph: (404) 522-0507
wgerryweber@gmail.com


*Plaintiff's Attorneys*

***Pro Hac Vice application forthcoming*